Okay, the last argued case this morning, so morning, is number 2012-7100 Slayton v. Secretary of Veterans Affairs, Mr. Bender. BENDER Good morning, Your Honors. Thomas Bender on behalf of Appellant Henry Slayton. This appeal concerns a very, I think, narrow issue concerning the proper interpretation of the earlier effective date provisions of 38 CFR Section 3.156C, which is based upon the receipt of service department records that were available to the VA, but not obtained before the VA made a decision on the claim. And the issue is whether that decision must be a final decision or whether it can be a non-final decision. The position of Mr. Slayton is that the decision that's referred to in the regulation is a decision, which means it includes a non-final decision, and the position of the Secretary is that it includes a final decision. As a brief bit of context, Section 3.156A provides for the reopening of a finally adjudicated claim on the basis of new and material evidence. Normally, if a claim is reopened on the basis of new and material evidence and an award is made, the effective date of the award is the date the request to reopen is made. Subsection C.3 of 3.156, however, sets forth an exception to that general rule for reopened claims that are granted based all or in part on service department records, depending on when VA receives those records. I think it would be helpful, I'm going to quote from the regulation. You can find the regulation at page 5 of the addendum to our brief. And subsection C.1 of 3.156 sets forth the language that triggers the earlier section in this part. At any time after VA issues a decision on a claim, if VA receives or associates with the claims file relevant official service department records that existed and had not been associated with the claims file when VA first decided the claim, VA will reconsider the claim notwithstanding paragraph A of this section. I'm trying to understand the progression here, though. Is it true that the RO already considered its 1991 denial and did so in light of these new records? There was a denial after the records were received. There were, however, two denials, first by the regional office and then by the board that denied his claim for service connection for PTSD before the records were received. But the bottom line is that there has been a denial after the records were received based on a review of those records. Isn't that right? Well, whether they were reviewed or not is not clear. Well, they were in the record, right? They're in the record. Yes, they are in the record. They were put in the record. So, the 1995 adjudication and the termination were based on those files in the record. And our position is that is irrelevant to the end result because even though his claim was denied before VA made a decision on a case, before getting the records, they were subsequently obtained after a JMR from the Veterans Court sent it back down. The records were associated with the claims file and both the RO and the board still denied the claims basically because the service department records, to be clear, were records that confirmed the fact that the base that he was stationed at in Vietnam underwent rocket and mortar attacks. And that was one of the stressors that he claimed. But the very concern that you have and that the statutory provision or the regulation upon which you rely, 3.156C, the very concern it's designed to address is to make sure that all of those service records get considered, not to make sure that you win based on those service records, but to make sure that they're considered and they were considered. I would disagree with that. I think that the remedial aspect of that is greater than that. That the remedial aspect of that is to ensure that the VA collects all available records before rendering a decision in the case. Well, I don't necessarily disagree and see a lot of distance between how Judge O'Malley characterized the regulation and you. My concern is that that was satisfied in 95. Certainly the regulation is to deal with if he got rejected in 91 and they didn't consider the service records at all until 2008, then the regulation deals with if new service records come in that were previously unavailable, you ought to get the benefit of the filing date on the previous case where the decision was done in the absence of the records. It seems to me that the particular circumstances here just don't fit that mold. Let me just finish and then you can respond. Because subsequent to 91, you had a second adjudication in 95 and in 95, they did have all of the service records. So clearly, based on those service records you were going to win, you would have gotten backtracked in 95 to 91. But I'm not understanding how you can shoehorn your facts into this regulation. Because in order to find that that is the purpose of regulation, you need to go back to the words of the regulation. Right, I'm looking at the words. And the way that you have interpreted it is exactly the way that the Veterans Court interpreted it by including a finality requirement that is not there. And I would like to just briefly give three rules of statutory construction that... Where are you thinking that I'm adding a limitation that doesn't exist? Do you want to tell me what part you are discussing? Notwithstanding any other section in this part, at any time after VA issues a decision on a claim, the Veterans Court read that to mean any time after VA issues a final decision on a claim. And further on down where it says records that existed and had not been associated with the claims file, when VA first decided the claim, the Veterans Court interpreted that as when VA first finally decided the claim. And the reason why I think that you need to focus on that language and why a decision on a claim is different than a final decision... Well, doesn't the fact that it uses the words VA instead of RO actually imply that it's talking about something farther down the road than just an RO decision? No. It includes whether or not they... either decision. I think though that you start with a basic proposition of the rules of construction and interpretation is that courts do not add words to regulations or statutes that change their meaning. They especially don't do it when in that same regulation, in Part A, the drafters specifically used refers to the term finally adjudicated claim. Now if they were referring to a final claim as part of subsection C, they would have very easily added that language there. Courts presume the fact that when you use one term in one section of a regulation but decline to use that same term in another section of the regulation, it implies a difference. Can I just get some basic clarification because maybe I just don't understand how this case went down. What is the significance of the distinction you're drawing between a final decision and a decision? Does that mean that you want to kick out the relevance of the 95 decision? What is the consequence of that? The consequence of it means is that if this... if the earlier effective date provisions are not triggered unless the records are received after a final decision, then he loses. Because? Because the language says that they were received before a final decision of the VA on this case. If the records existed in the record in 1991, right, then you would concede the effective date is 2002, right? Yes, because they were not equal. Now that 1991 claim was reconsidered and then a later decision was made in light of the new records, correct? Well they're actually... What is it that you want us to remedy? Well, there were actually two different reconsiderations because you had... the way that this went down factually is that he files a claim for PTSD. They don't obtain his service records. He gives off a number of stressors. They don't obtain any service records that might verify this. Right, but then they do and you're not objecting to any of that? No, well then they do get them after they have been ordered to do that by the Veterans Court. They get those back. They still deny it. They still haven't given him a VA psychological exam and when you read the record, all of the decisions are based upon the fact that the... But you haven't raised an objection to the absence of a VA exam? No, I think that's just part of the background here and it shows what the purpose of this regulation is because the RO, after they got the records, the RO and the board still denied the claim because they didn't think that rocket and mortar attacks were sufficient legal stressors for this. He did not appeal those claims, okay, so they became final. But in 2002, he had the claim reopened based on new and material stressor evidence, different from the rocket and mortar fire attacks. At that point, the board essentially gave very specific instructions to the regional office saying that consider this case which says that rocket and mortar fire attack is a legally sufficient stressor. We want you to have a VA medical examiner examine him to determine whether he has PTSD and to determine whether or not those rocket and mortar attacks caused his PTSD and whether or not they were verified by the records. And they did all that? They did all that and he got the benefit of that. He got a 2002 effective date based on all of that, including these very records that you said were missing. That's correct. And if they had done what... Basically, if they had followed that procedure, if they had gotten those records when he first filed his claim in the early 90s and then given him a VA exam and done all of that, he would have... And granted the claim, he would have been entitled to an effective date then. This is a remedial provision that basically says that the VA has an obligation to fully and sympathetically develop the record. They did not do that in this case. Well, that's a different claim. It's a different claim, but this is a specific regulation that is directed at not whether or not he gets to claim reopen. It goes to the earlier effective date. It goes to the effective date of the regulation. And basically, they're saying with a specific type of record, the service department records, if they are not obtained, then he is entitled to reconsideration to an effective date that goes back as far as the date of his... But the remedy you're asking us for is to ask them to reconsider based on the very records that they've already looked at and they'll reach the same conclusion. No, no, no. The records that they looked at helped them to decide that his claim was service connected. And because of the general rule regarding effective date on reopened claims, they assigned the effective date as the date that he filed the request to reopen. You're asking for a decision from us that the effective date for service connection was the date of the original filing. Well, actually what Subsection C does, it permits them to go back and do a retrospective disability evaluation. And it can be as early as the date that he filed his original claim. It might be some date later than that. And his level of disability may be different over that. Subsection C requires a retrospective application of that. But the relief that we're really asking here for is for Subsection C-1 to be read in its plain and ordinary terms. I mean, we are inserting the... And so what's the practical effect of that, of reading it in its plain and ordinary terms? What do we tell them to do? Well, we say the answer to the question, what you tell them to do is that they misinterpreted Section 3.156 to include a finality requirement. That if records are received after any VA decision, final or not, it doesn't matter if it becomes final later on, if the claim is subsequently reopened, then the earlier effective date provisions of C-1 apply. But from what you just said, some sort of graduated estimate of the degree of disability? That's correct. Because what Subsection C-1 says is essentially that in order for you to go back to the earlier effective date, you have to establish with medical evidence that they suffered the particular disability or injury at a particular time. And the percentage of disability can be different over time. But the point here is that, and one thing that I would like to get out in the last few minutes is that what we're also missing here is the fact that the regulation C-1 starts off with the provision notwithstanding any other section in this part. That simply goes to also show that they're not talking about a final adjudication because in Subsection A, they specifically talked about a final adjudication and what triggers the reopening of the claim. But for the separate action of reconsidering the effective date of a claim, there is no mention of the word final in there. It just says A VA decision. They could have very easily put in a final VA decision in there, but they did not, just as they had in Subsection A. And the fact that they did not do that, courts have used that as an indicator that they did not intend for that term to be there. And that's only made even more relevant by the fact that they begin off the section with notwithstanding any other section. It means without regard to whatever other sections are here, this is going to be read on its own. What's the date of his PTSD diagnosis? One of the board decisions recognized that there were medical treatment records that diagnosed him with PTSD in 1995, and that was just shortly before they received the service department records. And yet, even though he had the diagnosis of PTSD and they had the service department records that verified that he was subject to the rocket and mortar fire attacks, at that particular point, the RO and the board still denied his claim because if you read their decisions, they did not believe that the rocket and mortar fire attacks  Right, and it wasn't until 2002 that they got more evidence relating to that, right? In 2002, they reopened the file based on new and material stressor evidence, but it was unrelated to the rocket and mortar fire attacks. He had come up with the names of witnesses who had seen him have to handle the bodies of suicide bombers and things of that nature. But the focus of the remand after the board reopened the claim and sent it back down to the regional office was on the rocket and mortar fire attacks, essentially saying, look at this case, give him a VA examination, have the doctor determine whether or not that particular stressor of the rocket and mortar attacks could have caused that, and they did. And the decision was based upon the service department records because the VA doctor's opinion, which was used as the basis to grant service connection, referenced the rocket and mortar fire attacks, and in the RO's decision that granted service connection, they twice mentioned that the rocket and mortar fire attacks were verified by the service department records. Let's hear from the VA and we'll save some rebuttal time. Mr. Nager. Thank you, Your Honor. May it please the court. I'd like to start off by talking about the last point, which the claimant, Mr. Slayton, recently raised, in which he says that the grant of his benefits was based upon his service records. The problem with that claim is that on page 142 of the record, the board found exactly the opposite. They state that his grant of these benefits was not based upon service records. So to the extent he's making that contention, that contention would be contrary to findings of fact made at the jurisdiction review, and it's not appropriate for this court to review. But setting that aside, more to the point, Mr. Slayton's interpretation of the regulation creates an inherently arbitrary situation in which two similarly situated veterans, both of whom have their claims denied after the review of their in-service records, both of whom produce new and material evidence resulting in an award of benefits, receive completely different effective dates merely because at some point one of the veterans had relevant records missing from his claims file and the other did not. I mean, it's clear that the Department of Veterans Affairs considered his in-service records. In the earlier proceeding. In the earlier proceeding. That's correct, Your Honor. At page 66 of the record, and I know Mr. Slayton asserted it isn't clear. Well, at page 66 of the record, they're specifically talking about the in-service records. So I think it's clear from the record that indeed they did consider those records and ultimately denied his claim. With regards to the question of whether or not a final decision is required, as we set forth in our brief, we disagree with Mr. Slayton that they required a final decision at any level in this. They noted the impact of a final decision. And a final decision can have an impact upon these proceedings. There are separate regulations talking about the effect of final proceedings. There are regulations which talk about the effective date in a new and material evidence claim. All of those effective date provisions are found at 3.400 of the regulations. I believe it's Q2 and R. R is finality and I believe Q2 is new and finality, although I apologize if I've confused the two. He cites the use of the word notwithstanding in Part C.1. But C.1 only talks about the reconsideration trigger. What he's seeking to apply is C.3, the earlier effective date provisions, without a C.1 reconsideration going on. In other words, what he's seeking is what happened here in 2002. Was that the VA had his claim opened based upon new and material evidence? That would be 3.156A. And assigned him consistent with the regulations an effective date based upon that reopening on new and material evidence. Earlier, they had considered his claims. They had reopened his claims based upon service records. But that reopening was not occurring in 2002. You cannot sever C.1 and C.3. At points, Mr. Slayton does bring the two together, but it's a selective use of C.1. The word notwithstanding from C.1 is pulled into C.3, even though C.3, talking about effective date, never uses the word notwithstanding any other section. C.3 doesn't set aside 3.1400Q2 at all, or are. To the extent he raises doctrines of statutory interpretation, those actually fall in the government's benefits. There are more specific provisions. There are more specific regulations relating to new and material evidence, which this case is ultimately about. Simply, when you say, I'm sorry, I'm going to go back to something you said before. When you said that the board made this specific finding of fact that it was not reopened because of the new service records, the problem is when the board makes that finding of fact, it doesn't say what it was reopened for. What is your position as what prompted the reopening then if it wasn't the new service records relating to the stressors? Well, throughout the record, it's based upon new and material evidence. It's a little confusing what exactly that new and material evidence is because I don't think anywhere in the record they cite all the new and material evidence. They talk about his testimony. In the RO decision, they describe the new and material evidence as relating to mortar attacks. In one of the board decisions, it talks about new and material evidence talking about bodies taken off of a truck and it's unclear what exactly the connection is between those two. But I mean, the RO's decision does talk about the new and material evidence relating to mortar attacks, which is the basis of his PTSD claim. But the mortar attacks is what was confirmed in those service records, right? It's also contained in the service records. We agree that it contains, but it also contains the fact that he served in Vietnam and his service to his country is going to be part of and the grant of his claim will be based in part upon that. So simply having that information contained in your service records is not, it needs to be based upon those service records. And I think that's also clear when you look at in the appendix to Mr. Slayton's brief. He contains, he's attached the proposed rules for when this regulation was first promulgated and they discuss exactly what they mean about a decision based all or in part. And they talk about the situation where you have, someone brings a claim. That claim is denied based upon, say, there's no in-service stressor or there's no in-service occurrence. Subsequently, his records are obtained. And then after his records are obtained, normally he might get service connection, but he might not. Because whether or not there's an in-service stressor is only part of his claim. He would need a diagnosis. He would need to establish a nexus. Those sort of other elements which may later predate his claim. So at the end of the day, this record does remedy that specific situation where your records come in and they establish an element of your claim, but they're establishing that element of your claim. In this case, the reconsider, the ultimate grant of his benefits was not based upon those service records. It was based upon new and material evidence. But you can't tell me what that new and material evidence was? It's his testimony. That much we know. But we don't have in the record what exactly that new and material evidence is. You have the letters or the affidavits, do you not, of those who observed the observation of the body with the cracked skull? It's the testimony that he provided. And it was relied upon? Yes. This is really what troubles me about the case. This isn't new evidence of new events that took place. This is helping the veteran by coming forward with further description of what happened during service, not afterwards. And eventually, the VA agreed that the medical situation is service-connected. And what I have trouble with understanding is this. I'm going to call it a dance in trying to interpret the statute. If now that it's agreed and established that there is sufficient evidence to show that this is service connection, I do have trouble with understanding why the veteran doesn't have the benefit of his first filing requesting service connection, even though it took him quite a while to obtain sufficient evidence to persuade the VA. This situation is unchanged. And the source was his time in service, not something that happened subsequently. And it does look as if that introductory phrase in C1, that notwithstanding anything else, is trying to apply a more generous standard to these determinations, that when the facts are finally established as they are, it's no longer disputed that the current disability is based on service, that this debate as to what was final or semi-final, whether it was a final decision of a board or of someone else, I think is subsumed, or this, I think, is the question. But it does look to me as if this notwithstanding clause is intended to permit the VA to consider all of this evidence. I'll call it retrospectively, as of the time of the initial filing, because the facts already existed, they just hadn't been brought to the attention of the VA. Your Honor, the notwithstanding language occurs in the context of triggering the reconsideration. Notwithstanding any other section of this part, basically VA will reconsider a claim when there were service records that were not associated with its file. The problem is they already did that, and C-3, the reopening was not a reopening based upon C-1 to any extent. At least the 2002 afterwards proceedings were not a C-1 proceeding, it was based on new and material evidence. This claim was reopened based upon a different section. The VA is governed by the policy of being veteran-friendly, unlike any of the other cases that come before us. Doubts are to be resolved in favor of the veteran, and yet what we are hearing is what looks like a hyper-technical, some substance, statutory construction, hostile to everything that the veteran eventually established without dispute. That's absolutely incorrect, Your Honor, because they considered his records in 1996. After considering his records, they denied his claim, and they ultimately denied his claim. So the findings in the ultimate grant of benefits was not based upon the inadequacy of the prior proceedings, it was based upon new and material evidence. To read C-3 as broadly as Mr. Slayton contends would put us in a situation where, as we stated, two exactly similarly situated veterans, they get different effective dates based merely upon a procedural quirk. When in both cases, the VA did always consider their service records very carefully, and they did consider their service records here. Again, it was the new and material evidence that made the difference. C-1 rectifies the situation, and this becomes clear when you read also C-2, where the veteran has been put in a situation where his claim is denied because the VA, for some reason, whether through error or oversight or otherwise, failed to consider his records, failed to associate his records with the file, and his denial was in that situation absolutely incorrect. So without having to show new and material evidence, without even having to show clear and unmistakable error, without any of those predicates, the VA is required to reconsider his claim. But that does not apply when that evidence did not exist, when there's new and material evidence that is then introduced, and that's the case here. That's the finding of both the board and the Court of Appeals for Veterans Claims. The fact exists. It just hadn't been put in. It hadn't been filed with the board. I agree. This is extremely difficult as a matter of policy because having eventually decided on service connection as of the experience within the service, not something that happened afterwards, we say, never mind. You weren't able. You're a disabled veteran with a very serious psychological disability. Weren't able to pull enough together the first time around. It took you quite a while, and therefore, you'll suffer for it. Well, Your Honor, all I can say is in the case of clear and unmistakable error, he does get the benefit of the earlier pro facto date. So if this had been a claim of clear and unmistakable error, yes, he would have gotten the earlier benefit. But no, in the case of new and material evidence, the regulations are clear. He does not get that benefit. Okay. Any more questions for the VA? More questions? All right. Thank you, Mr. Meagher. Thank you, Your Honor. Briefly, Your Honor. Yes, you have three minutes. Thank you. I want to address what I think was a problem for me in the government's briefing because they think that they conflate two propositions, reopening and reconsidering. At several points during their brief, and I believe during his argument today, he asserted that the claim was not reopened and granted based upon the Service Department records. Well, those are two different things. He's half right and he's half wrong. The claim was not reopened based upon the Service Department records. They were not new and material evidence that allowed for the claim to be reopened. That is correct. The claim was reopened. When you look at the board decision that did reopen it, I think you will see that what they focused on were the identities and names and, I guess, names of people that were witnesses to certain other things concerning him handling dead bodies. That was the basis for them reopening the claim. But the Service Department records clearly were a basis for granting benefits once the claim was reopened. And that's clear from a review of the regional office's decision, indicating that these records were – what they did was they corroborated the rocket and mortar fire, which were a legally sufficient trigger for his PTSD and, therefore, it was based upon that. So I think that you have to keep those two concepts separate. They kind of conflate the two that are in there. There is – they also make the argument, or at least this is another argument, that the Veterans Court threw in basically one sentence that the earlier effective date provisions did not apply because the claim was not reopened based upon the Service Department records. It's our position that they do not have to be reopened. If the claim is reopened for any basis whatsoever, then you look at the earlier effective date provisions of Subsection C-1 to determine if they require a reconsideration of the effective date. That's just – But what's your answer to Mr. Mager's point that there was not clear and unmistakable error in the initial decisions? That Subsection C-1 is meant to be a substitute just with respect to assigning an earlier effective date with respect to only Service Department records that weren't obtained before the decision was made and that the Veterans should not have to go through the mountains of a Q claim, that burden, to achieve that burden in order to get the effective date under C-1. It's meant to be an easier way for him to get an effective date. A Q claim means it's all reopened to determine whether or not he gets benefits or earlier effective date. This Subsection C-1 is limited to the effective date. And the fact of the matter – I'll just close with this. The fact of the matter is here, when you look at the record, nothing changed from the 1996 final decision that denied him benefits and the 2002 decision that reopened the claim and granted him service connection benefits. Nothing had changed. The only thing that changed was that the board finally told the RO that you need to take a closer look at the stressor evidence. Basically, they told them, when you look at the instructions that they gave them, they basically told them this is a satisfactory, a legally sufficient stressor, and you need to determine whether or not it's connected with his PTSD and whether he's diagnosed with PTSD. None of that had been done before, but nothing else had changed, except that they determined that they wanted them to look again at this particular stressor. Unless anybody has any questions, I'll yield the rest of my time. All right. Thank you, Mr. Bender and Mr. Mager. This is taken under submission. All rise.